IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN D. ROBERTS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, in her | : | |
| capacity as Acting Commissioner of the | : | |
| Social Security Administration, | : | No. 17-2443 |
| Defendant. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                                                                             **April 23, 2018**

Unwilling to recognize the same-sex common law marriage of John Roberts and Bernard Wilkerson, the Social Security Administration ("SSA" or "Administration") for months refused to grant Roberts' application for widower's insurance benefits following Wilkerson's death. To vindicate his rights, Roberts sued Nancy Berryhill in her capacity as then-Acting Commissioner of the SSA. As a result of this litigation, the SSA finally recognized Roberts' marriage and granted his application for benefits. Now before the Court is Roberts' application for attorney's fees and costs under the Equal Access to Justice Act (EAJA). For the reasons discussed below, the Court grants the application.

## I. BACKGROUND

On July 4, 1990, John Roberts and Bernard Wilkerson expressed to one another their intent to establish a common law marriage. (Br. in Supp. of Pl.'s App. For Att'y's Fees and Costs [Pl.'s Fees Mem.] at 2.) Under the laws of Pennsylvania at the time, Roberts and Wilkerson, as a same-sex couple, could not legally marry. However, they lived together as a couple from that point until Wilkerson's death in 2015. (*Id.*) Shortly before Wilkerson's death—after a federal

court struck down Pennsylvania's ban on same-sex marriage in *Whitewood v. Wolf*, 992 F. Supp. 2d 410 (M.D. Pa. 2014)—Roberts and Wilkerson became formally married under Pennsylvania law. (Pl.'s Fees Mem. at 2 n.1.)

In February 2016, Roberts applied for Social Security benefits, including widower's insurance benefits based on his marriage to Wilkerson. (*Id.* at 2.) Roberts' application stated that he and Wilkerson had lived in common law marriage since 1990. (*Id.*) However, the SSA refused to recognize this marriage and therefore denied widower's insurance benefits to Roberts. (*Id.*) When Roberts sought clarification regarding the SSA's decision, the Administration informed him that it was sending his request to its Philadelphia office. (Compl. ¶ 20.) Roberts followed up with that office multiple times; the office repeatedly informed him that his application was still under consideration and could not be granted. (*Id.* ¶ 21.)

In an attempt to convince the Administration to recognize his marriage, Roberts filed a Petition for Declaration of Common Law Marriage in the Philadelphia Orphans' Court. (Pl.'s Fees Mem. at 3.) He named the SSA as an interested party and served a citation on the Administration to respond to his Petition. (Compl. ¶ 23.) The SSA responded via letter to the court:

> [C]ounsel for the Social Security Administration has informed counsel for the Estate of Bernard Wilkerson that it does not intend to file a response to the Petition. The Social Security Administration does not have any knowledge or information concerning the facts contained in the Petition and, therefore, is unable to show cause as to why the Petition should or should not be granted.

(Compl. Ex. B.)

After an evidentiary hearing, the Orphans' Court granted Roberts' petition and declared that he and Wilkerson "entered into a valid and enforceable marriage under the laws of the Commonwealth of Pennsylvania on July 4, 1990 and remained married until the death of

Bernard O. Wilkerson on December 22, 2015." (Compl. Ex. A at 4.) The SSA did not appear at the hearing and did not appeal the ruling. (Pl.'s Fees Mem. at 3.) After the ruling, the U.S. Attorney's Office for the Eastern District of Pennsylvania issued a statement explaining that "[n]ow that [Roberts' petition] has been granted, any application by Mr. Roberts for Social Security death benefits will be processed and evaluated by the SSA in light of the court's order recognizing the validity of the common law marriage between Mr. Roberts and Mr. Wilkerson." (*Id.*)

The Administration did not keep this promise. Instead, despite the Orphans' Court's decision, the SSA continued to delay granting Roberts' application for benefits. (*Id.* at 4.) Nearly three years after same-sex marriage became legal in Pennsylvania and nearly two years after the United States Supreme Court made marriage equality the law of the land, *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), the Administration informed Roberts that it was not prepared to grant his application because "there has not been a policy interpretation ruling on [Pennsylvania] Common Law Same-sex marriages." (Pl.'s Fees Mem. at 4.)

In response to the SSA's continued efforts to deny him benefits to which he was entitled, Roberts sued the Administration, seeking a court order requiring it to recognize his marriage to Wilkerson and thus grant him benefits. (*Id.*) Two months after the lawsuit was filed, the SSA sent a letter to Roberts stating that he was not entitled to benefits. (*Id.*)

The SSA then filed a motion to dismiss. On November 20, 2017, this Court held oral argument on the motion. Following the hearing, the Court issued an Order in which it warned the SSA that it found the Administration's arguments "unavailing" and ordered the SSA to "revise its decision" on Roberts' benefits claim or provide an explanation as to why he was not entitled

to benefits. (ECF No. 17.) The Court required the SSA to respond within 30 days after it received additional documentation of Roberts' marriage that he agreed at the hearing to provide. (*Id.*)

On December 22, 2017, the SSA informed Roberts' counsel that it was granting his claim for benefits based on his common law marriage. (Pl.'s Fees Mem. at 5.) The SSA officially notified Roberts of its revised decision on January 2, 2018. (*Id.*) Meanwhile, the SSA informed the Court that Roberts planned to file an application for attorney's fees and costs. (*Id.*) Roberts then moved the Court to enter judgment in his favor based on the revised decision; the Court deferred ruling on the motion and ordered Roberts to file a petition for fees and costs.

## II.  DISCUSSION

### A.  Roberts is a Prevailing Party

The EAJA allows courts to award attorney's fees and costs to a "prevailing party" in an action "against the United States or any agency or any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(a)(1). The test for whether a party can be considered "prevailing" involves two inquiries: (1) whether there has been a "material alteration of the legal relationship of the parties," and (2) "whether that material alteration is 'judicially sanctioned.'" *Raab v. City of Ocean City, N.J.*, 833 F.3d 286, 292 (3d Cir. 2016). "The Supreme Court has given a generous formulation to the term prevailing party." *Truesdell v. Phila. Housing Auth.*, 290 F.3d 159, 163 (3d Cir. 2002).

#### 1.  *Roberts obtained a material alteration in the parties' legal relationship.*

A plaintiff must obtain "at least some relief on the merits of his claim" in order to be considered a prevailing party. *Raab*, 833 F.3d at 293. "[I]nterim relief . . . that is not in some way merit-based will not confer prevailing party status." *Id.* However, the relief obtained need not be

a final judgment in the plaintiff's favor. *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232 (3d Cir. 2008) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)).

Roberts brought this lawsuit in order to force the SSA to recognize his common law marriage and grant his application for widower's insurance benefits. In its November 20, 2017 Order, the Court ordered the SSA "to revise its decision regarding [Roberts'] claim for widower's insurance benefits or provide an explanation as to why [Roberts was] not entitled to benefits." (ECF No. 17.) Following this Order, the SSA did, in fact, reverse its initial decision and determine that Roberts had a valid common law marriage and was "entitled to Surviving Spousal benefits." (Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Court to Enter J. Ex. 5.)

Despite its reversal, the SSA argues that Roberts did not obtain relief on the merits because he did not receive the "specific relief he sought through his complaint—*i.e.*, declaratory judgment, a writ of mandamus, and/or an injunction." (Def.'s Resp. to Pl.'s App. For Att'y's Fees and Costs [Def.'s Fees Resp.] at 6.) In other words, even though Roberts comes away from this case with precisely what he sought, broadly speaking—recognition by the SSA of his common law marriage and benefits based on that marriage—the SSA now claims that Roberts did not achieve relief on the merits of his claim, simply because the Court never granted the specific relief Roberts sought in his complaint.

The Administration is wrong. Its analysis puts form over substance. Roberts obtained the exact outcome he sought in this litigation. It does not matter that the relief did not come attached with a formal name, such as "declaratory judgment." Indeed, the Court did not grant a declaratory judgment or injunction because such relief was unnecessary after the SSA read the Court's November 20 Order and wisely reversed its initial decision and granted Roberts the

5

benefits to which he had been entitled for years. The SSA's reversal clearly constituted a material change in the parties' legal relationship.

## 2. *The material alteration was judicially sanctioned.*

The second inquiry in the prevailing party analysis asks whether the alteration in the parties' legal relationship is judicially sanctioned, or marked by "judicial imprimatur." *Raab*, 833 F.3d at 293. A party can satisfy this requirement by showing that the "change in the parties' legal relationship" is "the product of judicial action." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 228 (3d Cir. 2011).

The Court provided its imprimatur in this case when it ordered the SSA to either revisit its decision on Roberts' claim for benefits and either revise the decision or provide an explanation as to why he was not entitled to benefits by a Court-imposed deadline. The Court's Order termed the SSA's arguments in favor of dismissing the action "unavailing." (*Id.*) Nonetheless, the SSA argues that its reversal on Roberts' claim for benefits was "voluntary." (Def.'s Resp. at 10) The Court disagrees. After months of what can best be described as governmental intransigence, the SSA finally awarded benefits to Roberts only after its motion to dismiss his claim was all but denied. *Cf. People Against Police Violence*, 520 F.3d at 35 (rejecting city's assertion that plaintiffs achieved relief only due to its voluntary actions, noting that the city ultimately came to an agreement with plaintiffs only after its motion to dismiss was denied). Moreover, following oral argument on the motion to dismiss, the SSA was well aware of the Court's "dim view" of the Administration's position. (ECF No. 20 [Tr.] at 14.) Specifically, the Court disagreed with the SSA's argument that it required more information than the Orphans' Court's record provided, noting that Roberts should not have to "prove the case twice." (*Id.* at 15.) In response to the Court's November 20, 2017 Order, the SSA—with the

6

deadline imposed by the Court looming—awarded Roberts the benefits he had originally sought. The Court's November 20 Order put the necessary judicial imprimatur on the change in the parties' legal relationship.

Because there was a judicially-sanctioned change in the relationship, Roberts is a prevailing party under the EAJA.

### B. The Administration's Position Regarding the Orphans' Court Decree Was Not Substantially Justified

The EAJA allows courts to award attorney's fees to a prevailing party unless the court finds that the government's position "was substantially justified." 28 U.S.C. § 2412(d)(1)(A). The government bears the burden of demonstrating a substantial justification for its position. *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993). "[T]he government must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998). "The government's position under the EAJA includes not only the position taken in the litigation but the agency position that made the litigation necessary in the first place." *Id.* Where the government is defending two positions, "[i]f either . . . position does not bear scrutiny, the prevailing private party should be awarded attorneys' fees." *Taylor v. Heckler*, 835 F.3d 1037, 1040 (3d Cir. 1987).

The SSA points to two positions that it claims were substantially justified: (1) its position that it was not bound by the Philadelphia Court of Common Pleas' order declaring that Roberts and his partner had a valid common law marriage; and (2) its position that this Court lacked jurisdiction over Roberts' claims. Because the SSA has not shown a reasonable basis in law for the first argument, the Court finds that its position was not substantially justified.

The SSA argues that its position that it was not bound by the Orphans' Court order was reasonably grounded in the principle of sovereign immunity. (Def.'s Fees Resp. at 14.) The Administration notes that state courts generally do not have jurisdiction over federal agencies absent a waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Based on this principle, it argues that it was not bound by the Orphans' Court decree declaring that Roberts and Wilkerson had a valid common law marriage. The SSA's position is clearly incorrect, however, because regardless of whether it was "bound" by the Orphans' Court's decision, the Social Security Act directs the Administration to adhere to the Orphans' Court's decision regarding Roberts' marriage in deciding his application for benefits.

The Social Security Act provides that "[a]n applicant [for benefits] is the . . . widower . . . of a fully or currently insured individual . . . if the courts of the state in which such insured individual . . . was domiciled at the time of death . . . would find that such applicant and such insured individual were validly married at the time such . . . [insured individual] died." 42 U.S.C. § 416(h)(1)(A)(i). Relying on this statute, Roberts argues that Pennsylvania courts would recognize his marriage because a Pennsylvania court, applying Pennsylvania law, found that he had a valid marriage. (Pl.'s Fees Mem. at 14.)

The SSA reads the statute, and specifically the term "*courts* of the state," to mean that it should look to the "law enunciated by the highest court in the state" to determine whether an individual had a valid marriage. (Def.'s Fees Resp. at 18.) Based on this reading, the SSA argues, in short, that its obligation in the case at hand was to apply law requiring a petitioner to demonstrate "clear and convincing evidence" of a common law marriage. (*Id.* at 17 (citing *In re Carter*, 159 A.3d 1970 (Pa. Super. Ct. 2017))). The SSA argues that because the "trial court documents [Roberts] provided to SSA in the initial administrative stage did not contain" such

8

evidence, it could not determine whether the Orphans' Court's decision was "consistent with the law enunciated in *Carter*.[1] (Def.'s Fees Resp. at 17.)

But the SSA ignores a key aspect of Pennsylvania law. In Pennsylvania, when a court declares a marriage valid, "unless reversed upon appeal, the declaration shall be conclusive upon all persons concerned." 23 Pa.C.S. § 3306; *see Ross v. Policemen's Relief & Pension Fund of City of Pittsburgh*, 871 A.2d 277 (Pa. Commw. Ct. 2005). Thus, when a marriage is declared valid and the decision is not reversed, Pennsylvania courts will recognize the marriage as valid. Courts would not question the intact holding of a court that has declared a marriage valid after an evidentiary hearing. *See Ross*, 871 A.2d at 279 (affirming trial court decision ordering pension fund to pay benefits based on common law marriage that "had been 'finally decided'").

In Roberts' case, the Orphans' Court declared his marriage valid after an evidentiary hearing. (Compl. Ex. A.) The SSA had an opportunity to challenge Roberts' claim of a common law marriage. It chose not to do so, and the U.S. Attorney's Office went so far as to announce that the SSA would reevaluate Roberts' claim for benefits "in light of the [Orphans' Court's] order recognizing the validity" of his marriage. (Pl.'s Fees Mem. at 3.) Because neither the SSA nor anyone else contested or appealed Roberts' claim, the Orphans' Court's decision became "conclusive," and would therefore be recognized by the courts of Pennsylvania. 23 Pa.C.S. § 3306. Thus, because "the courts of the state" in which Roberts and Wilkerson were domiciled would find that they were validly married at the time of Wilkerson's death, the Social Security Act § 416(h)(1)(A)(i) directs the SSA to treat Roberts as the widower of Wilkerson.

---

[1] The irony of the SSA's citation to *Carter* cannot be overstated: *Carter* cites the very decision by the Orphans' Court at issue in this case to support the proposition that Pennsylvania courts recognize same-sex common law marriages. *See Carter*, 159 A.3d at 978, n.8 (citing *In re Estate of Wilkerson*, No. 500 DE of 2016 (Phila. Cty. C.C.P. filed Sept. 25, 2016)). The *Carter* court made no mention of the sufficiency (or lack thereof) of the evidence in Roberts' case.

The SSA chose to ignore the courts and statutes of Pennsylvania and instead declare itself arbiter of Pennsylvania law on common law marriage. In so doing, it took an unreasonable legal position. Thus, its position regarding the effect of the Orphans' Court decree was not substantially justified, and the court can grant Roberts' application for attorney's fees.

### C. Roberts' Fee Request is Reasonable

"The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Courts are free to adjust a fee award based on the reasonableness of the hours expended and the results achieved. *Id.* The EAJA allows courts to award a maximum of "$125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

Roberts requests an award of $27,720 in attorney's fees, based on 140 hours of work at $198 per hour. (Pl.'s Fees Mem. at 18.) Roberts' attorney bases the upward adjustment in his hourly rate on an increase in the Consumer Price Index; the Third Circuit has approved using the CPI to determine cost of living adjustments. *Garcia v. Schweiker*, 829 F.2d 396, 401 (3d Cir. 1987). The Court finds this hourly rate reasonable. The Court also finds the number of hours reasonable. Although the SSA argues that the amount of time Roberts' counsel spent on the brief in support of his application for fees was excessive, counsel billed fewer than the three hours per page that has previously been found reasonable in this circuit. *See Walton v. Massanari*, 177 F. Supp. 2d 359, 365 (E.D. Pa. 2001) (citing *Maldonado v. Houstoun*, 256 F.3d 181, 185–87 (3d Cir. 2001)). The Court will award Roberts $27,720 in attorney's fees.

The EAJA also allows prevailing parties to obtain a judgment for costs. 28 U.S.C. § 2412(a)(1). The Court therefore awards Roberts $400 in costs, the amount of his filing fee.

### III. CONCLUSION

The unjustifiable approach the SSA took in handling Roberts' case was contrary to the purpose behind the Social Security Act and to prevailing caselaw in this country. Despite Roberts' longstanding common law marriage, the SSA spent months searching for reasons to deny him benefits based on that marriage, allegedly because the Administration did not have a "policy interpretation" on same-sex common law marriages in Pennsylvania. Roberts sued the Administration, and after this Court ordered the SSA to revisit its decision, it finally recognized the marriage and awarded benefits. Because Roberts is a prevailing party under the EAJA, and the SSA's position regarding the Orphans' Court decree validating his 25-year common law marriage to Wilkerson was not substantially justified, the Court awards attorney's fees and costs to Roberts. An Order consistent with this Memorandum will be docketed separately.